MISSOURI, KANSAS & TEXAS RAILWAY CO. vs TRUSKETT.

Opinion delivered October 26, 1899.

1. *Written Contract—Incorrect Copy Furnished by Defendant—Amendment—Parties Bound by Contract.*

Appellee's complaint set up a written contract furnished him by the agent of appellant. He subsequently discovered that the copy furnished him by the appellant was not correct, and amended his complaint alleging that the contract was executed under duress. The evidence did not tend to show duress. *Held*, That appellee was bound by the written contract, and appellant cannot complain of being held liable under its own contract, simply by reason of inartificial pleading by the appellee superinduced by its agent in furnishing appellee an incorrect copy of the contract at the commencement of the action.

2. *Written Instrument— Verbal Evidence to Contradict—Error Cured by Withdrawing from Jury.*

Whatever error there may have been in permitting evidence of verbal arrangements contradicting a written instrument is cured by the court withdrawing such evidence from the jury.

3. *Delay in Shipping Live Stock—Verbal Notice of Destination—Place of fixing Value to Determine Damages.*

Appellee notified the agent of appellant at the time of the

delivery of the cattle for shipment, that the cattle were to be shipped via Kansas City to Chicago. The contract for shipment designated Kansas City as the destination. *Held*, That upon suit for damages for negligent delay in transporting the cattle, it is proper in estimating appellee's damage to permit evidence of the market value at either Kansas City or Chicago.

*4. Act of God—Falling of Heavy Dew Not.*

The falling of a heavy dew is no such act of God as will relieve a railroad company from the obligation to transport cattle without necessary delay.

*5. Delay in Shipping Live Stock—Extra Feed an Element of Damages.*

Extra feed for cattle by reason of delay in shipment is a proper element of damages.

*6. Written Contract—Damages for Breach—Interest.*

In a suit upon a written contract interest is properly allowable upon damages recovered for the failure of defendant to perform its written contract.

*7. Injury to Live Stock—Elements of Damage.*

It was not error to instruct the jury that defendant was liable to plaintiff for injury to his cattle, caused by keeping them on the cars an unusual length of time and handling them in a rough and severe manner, whereby they became injured and depreciated in value.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by H. A. Truskett against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff. Defendent appeals. Affirmed.

On the 26th of September, 1892, complaint was filed in this case by plaintiff below (appellee here), against the defendant below (appellant here) alleging that in

July, 1892, plaintiff delivered to defendant 180 head of cattle to be transported by defendant to Paola, Kan., and from there to be forwarded to Chicago, Ill., via Kansas City, Mo.; that said cattle were received by defendant at Stevens, Ind. T., in a good, healthy, merchantable condition; that said contract of shipment was in writing, and attached to complaint as Exhibit A,—and further alleges: "* * * That said defendant, through its agents, servants, and employes, after receiving said cattle and fastening them in its said cars, became grossly negligent, and failed, neglected, and refused to transport said cattle in accordance with said agreement, and on account of insufficient and defective means and methods of transportation, failed to get said cattle to Paola, Kansas, until twenty-four hours later than the usual and ordinary time. That said cattle were delayed by defendant's negligence as aforesaid in reaching their destination at Chicago, Ill., for twenty-four hours, and, when they did reach their said destination, were greatly damaged and injured, and caused plaintiff a large amount of extra time and expense in marketing the same. Paragragh 1. Whereby, on account of extra expense in feed and delay as aforesaid, and on account of the shrinkage in weight, and the tired, exhausted, and injured condition of said cattle when they did arrive at their destination as aforesaid, plaintiff was greatly damaged, to-wit, in the sum of two hundred ($200) dollars. Paragraph 2. That on account of the carelessness, negligence, and breach of contract, as aforesaid, on defendant's part, plaintiff suffered further and greater loss on account of the depreciation in the market value of said cattle, for the reason that the cattle market was about $1.25 per hundredweight lower on the said day when defendants actually delivered said cattle in Chicago, Illinois, than it was on the day previous, when they should have been delivered according to contract. That the total weight of said 180 head of cattle was 184,350 lbs., or thereabouts. And

plaintiff avers the fact to be that said cattle, on the said day
that the defendant delivered them in Chicago as aforesaid,
and on account of the depreciated market, were worth at
least twenty-three hundred ($2,300) dollars less than they
would have been on the day previous, when defendant con-
tracted and agreed to deliver them." On June 9, 1893,
plaintiff, by leave of court, filed an amended complaint, and
alleged: "That during the year 1892 defendant was a com-
mon carrier of live stock for hire. That plaintiff on July 4,
1892, delivered 180 head of cattle to be delivered at Chicago,
Ill., within a reasonable time, and made a verbal contract
with defendant to that effect previous to the delivery of said
cattle to defendant. That said cattle were loaded at Stev-
ens, Ind. T., and were in a sound, healthy, and merchant-
able condition. That no contract in writing was made until
after the cattle were received, loaded in the cars, and trans-
ported about 10 miles from Stevens, and through and
beyond Coffeyville, Kan., its next station. That then de-
fendant presented to plaintiff two written contracts, attached
as Exhibits A and B to this amended complaint, to sign.
Plaintiff had no opportunity to read or examine said written
contracts, and signed them under protest. That after the
cattle were delivered at Chicago, and plaintiff returned home,
he requested defendant's agent at Coffeyville, Kan., to give
him said pretended written contracts, or copies thereof, and
said agent gave him a pretended copy, which plaintiff at-
tached to his original complaint, marked "Exhibit A."
Plaintiff afterward learned that said pretended copy was not
a copy at all. Plaintifi's attorney made demand for true
copies, and was furnished one by defendant's attorney, but
defendant failed and refused to furnish the other. That
said cattle were shipped in seven cars, according to the
aforesaid verbal contract, and plaintiff signed the written
contracts under duress. Plaintiff asks that said written con-
tracts be adjudged null and void. That said defendant,

after receiving said cattle, "* * * became grossly negligent and careless, and failed, neglected, and refused to feed, water, handle, and transport said cattle in accordance with said agreement, and on account of insufficient and defective means and methods of transportation, and on account of defective, imperfect, and impracticable locomotive engines, and on account of defective railway cars, tracks, and roadbed, failed for about twenty hours to get said cattle further than a short distance beyond the said station of Coffeyville, Kansas, where they were held on board and fastened in defendant's cars for about twenty (20) hours without food or water, and that said cattle on account of said defendant's neglect as aforesaid, did not reach Paola, Kansas, and the said Kansas City, Missouri, on their way to said city of Chicago, until about twenty-four hours later than the usual, regular, and ordinary running time on said defendant's line of railway and other connecting lines. That said cattle did not reach the said city of Chicago, Illinois, until twenty-four hours later than the usual, ordinary, and regular time when they should have reached there. That said delay was caused entirely by said defendant's negligence and carelessness as aforesaid, and when said plaintiff's cattle did reach their said destination at Chicago, Illinois, they were greatly damaged and injured, and caused plaintiff a large amount of extra time and expense in marketing same, and a great loss by way of shrinkage in weight, etc. Whereby, on account of said extra expense in feeding and delay, loss of time, and shrinkage in weight of said cattle, and their tired, exhausted, and injured condition when they did so arrive at their said destination as aforesaid, plaintiff was greatly damaged, to-wit, in the sum of five hundred ($500) dollars, for which amount plaintiff prays judgment against said defendant. For a second and further paragraph in this, said plaintiff's complaint, plaintiff makes the above and foregoing first paragraph hereof a part of this his second paragraph, and

says that on account of the carelessness, negligence, and
breach of contract as aforesaid on the part of said defend-
ant, its said agents, servants, and employes, plaintiff suffer-
ed further and greater loss and damage to his said stock on
account of the depreciation of the market value of said
cattle, for the reason that the cattle market was about $1.25
per hundredweight lower on the said day when defendant
actually delivered said cattle in Chicago, Illinois, than it was
on the day previous when they should have been delivered
according to said contract; that the total weight of said one
hundred and eighty (180) head of cattle was 184,350 lbs., or
thereabouts, and said plaintiff avers the fact to be that said
cattle on the said day that defendant delivered them in
Chicago, as aforesaid, and on account of the depreciated
market, were worth at least $2,300 less than they would
have been on the day previous, when defendant contracted
and agreed to deliver them; that said delay in the delivery
of said cattle by said defendant, its agents, servants, and
employes, was caused solely on its said line of railway
between said station of Stevens, Indian Territory, and
its station named 'Parsons,' in said state of Kansas; that
this plaintiff in no way contributed to said delay, but, on the
contrary, was in actual attendance on said stock during
their transit from said Stevens station, Indian Territory, to
said Chicago, Illinois, and did everything that he could to
prevent said delay, and cause said cattle to be delivered at
their destination in time as they should have been deliv-
ered." On August 11, 1896, defendant filed its answer to
the amended complaint, and denied specifically and in detail
each and every allegation in plaintiff's amended complaint,
and alleged ''that on the 4th day of July, 1892, it did enter
into a written contract with H. A. Truskett for the trans-
portation of three car loads of cattle from Coffeyville, Kan-
sas, to Paola, Kansas, which were consigned to White & Rial,
of Kansas City, Missouri, which said contract is attached

hereto, and marked 'Exhibit A,' and also a written contract for the transportation of four car loads of cattle from Coffeyville, Kansas, to Paola, Kansas, which were consigned to the George R. Barse Live-Stock Commission Company, a copy of which contract is attached hereto, and marked 'Exhibit B.' Defendant further states that it performed the said contracts fully, and that plaintiff was not damaged in any way by failure of defendant to transport said cattle as it agreed to do. Defendant, for further answer, states that plaintiff did not give notice in writing of any claim for damage because of any failure of defendant in any way to comply with said contracts, to any general officer of the defendant, or to the agent nearest to the aforesaid delivering station, within thirty days after said loss or damage had been claimed to have been sustained, though defendant had such general officer and such agent to whom plaintiff could have given notice." On September 21, 1896, defendant "files motion for leave to withdraw from the files the answer to the amended complaint herein, which motion is allowed, whereupon the defendant files motion to strike out the complaint, which motion is by the court overruled, and the defendant then filed answer to amended complaint." On September 22, 1896, case was tried to a jury, who returned a verdict for plaintiff. Defendant filed motion for new trial, which was overruled by the court, and judgment entered on the verdict, and defendant appealed to this court.

*Clifford L. Jackson*, for appellant.

*S. M. Porter*, for appellee.

TOWNSEND, J. The appellant has filed 43 specifications of error, which it has discussed under eight special assignments. They are as follows, to-wit: "(1) The district court should not have permitted appellee to have

introduced any evidence under the amended complaint, but should have struck out this complaint on appellant's motion, and should not have held that appellee complied with terms of written contracts, and should have directed a verdict for appellant. (2) The appellee should not have been permitted to introduce testimony of the verbal arrangements which contradict the written contracts which the court held binding in this case. (3) The appellee should not have been permitted to introduce testimony as to the market value of the cattle in question in Chicago, and the court should have instructed the jury that they could not consider any evidence as to the market value of the cattle in Chicago in this case, but must confine their consideration to the evidence as to the market value of the cattle in question in Kansas City. (4) Neither the appellee nor his brother should have been permitted to testify as to the market value of the cattle in question in Kansas City and in Chicago. (5) The account sales in this case were not competent evidence and should not have been admitted. (6) The court should have instructed the jury that if there was any delay in the transportation of the cattle in question by the appellant, and said delay was occasioned by the act of God, and not by the fault of appellant, the appellee could not recover any damages on account of said delay from the appellant; and the court should not have instructed the jury as it did on the question of the delay on the appellant's line of railway. (7) The appellee should not have been permitted to offer proof as to the extra feed required for the cattle in question, and was not entitled to recover any damages in this case on account of the expense incurred in feeding the cattle in controversy. (8) The jury were wrongfully instructed upon the question of the right of the appellee to recover interest on damages in this case."

As to the first assignment of error, we would say that the appellee in his original complaint set up that the con-

tract of shipment was in writing, but, having subsequently ascertained that the copy furnished him by the agent of appellant was not correct, it became necessary to amend his, complaint.  In doing so, he states that he was required to sign two contracts in writing, one covering four cars of his cattle,. and the other three cars, and that these contracts were signed after the train was some miles on its journey; and. while he attaches the two copies to his amended complaint, he asks that they be declared void, and that the appellant be held to its liability as a carrier, independent of the written contracts.  The trial court, upon its coming to his knowledge during the trial that appellant had not only signed the written contracts at the time of shipment, but subsequently, and on his return from the shipment, signed the following:  "We, the undersigned persons in charge of the live stock mentioned in the within contract, in consideration of the free pass granted us by the Missouri, Kansas & Texas Railway Co., and of the other covenants and agreements contained in said contract, including the rules and regulations printed on the back thereof, all of which, for the consideration aforesaid, are hereby accepted by us, and made a part of this, our contract, and all the terms and conditions of which we hereby agree to observe and be ʀeverally bound by, do hereby expressly agree that during the time we are in charge of said stock and while we are on our return passage, we shall be deemed employes of said Mo., Kan. & Tex. Railway Co., for the purposes of said contract stated, and that we do agree to assume, and do hereby assume, all risks incident to such employment, and that said railway company shall in no case be liable to us for any injury or damage sustained by us during such time for which it would not be liable to its regular employes.  H A. Truskett  D."—held that appellee was bound by the written contracts and appellant cannot complain of being held liable under its own contracts simply by reason of inartificial

Written Contract. Parties bound by.

pleading by the appellee, to which appellant had fully an-
swered, superinduced by the mistake made by its own agent
in not furnishing appellee correct copies of the contracts at
the commencement of the suit.

As to the second assignment of error, we say that,
while some evidence had been introduced of verbal arrange-
ments, the same was withdrawn by the court from the jury,
as follows: "The plaintiff rests his case here, and in your
absence the defendant submitted a motion which the court
has allowed. That motion is to the effect that the court
should withdraw from the jury all testimony submitted with
reference to the verbal contract between the plaintiff and
defendant in this case. The court has sustained that
motion, and is of the opinion that whatever talk was had be-
tween the plaintiff and the agents of the railroad company
was merged in a written contract, and its terms are not to
govern the liability of the company in this case. The jury
will consider the written contract and its terms as govern-
ing between the plaintiff and defendant in this case."

Oral agree-
ments super-
seded by
written con-
tract.

As to the third assignment of error, it was in evidence
that the appellee notified the agent of appellant at the time
of the delivery of the cattle for shipment that they were to
be shipped via Kansas City to Chicago, Ill. The contract
for the shipment specified Kansas City, Mo., as the destina-
tion of the shipment. The trial court upon that question
instructed the jury as follows: "The court instructs the
jury that, if they should find in this case that the plaintiff
is entitled to recover from the defendant, in arriving at the
amount of such damages they must not cosider any evidence
as to the market value of the cattle at Chicago, Ill., unless
they should find from the evidence that the cattle were to be
shipped to and sold only in that market; but if the jury
should find from the evidence that the cattle were to be
shipped to and sold only in Kansas City, Missouri, they

must confine themselves to the evidence with reference to the markets and value of cattle at that place." The cattle were held by appellee in Kansas City for about 24 hours, and the court instructed the jury as to such destination as follows: "If the jury find from the evidence that they must consider the state of the cattle market at Chicago, Ill., on. the days in question in this case, in determining what damages, if any, plaintiff is entitled to recover from defendant in this case, then the court instructs the jury as follows: You are instructed that the plaintiff in this case, if he desired to ship his cattle to Chicago, had no right to delay them in Kansas City in order to test the market there, and then charge to defendans's negligence any fall in the market at Chicago during the time said cattle were kept from being sold on the market at Chicago by reason of their being so delayed in Kansas City, if you should find that they were so held at Kansas City, Missouri." The cattle were loaded on the cars at Stevens, Ind. T., but, the appellant having no station agent at that point, the contracts on their face purport to ship the cattle from Coffeyville, Kan., which was at that time the end of appellant's road. The distance from Coffeyville, Kan., to Parsons, Kan., was about 30 miles, and about 12 or 14 hours was consumed in making that distance; and for the delay thus occasioned by appellant in the arrival of the cattle at their destination. were the market repoits and value of the cattle at either Kansas City or Chicago permitted to go to the jury, that they might ascertain if any damages had accrued to appellee by reason of said delay on appellant's road, and for that purpose we think the evidence was properly admitted, especially when guarded by the instruction of the court supra. This disposes, also, of the fourth and fifth assignments of error.

*Damages. What market to govern.*

As to the sixth assignment of error, the contention of appellant is that the fall of a heavy dew is an act of God, which should relieve a common carrier from its liability.

We cannot concur with appellant in this contention. Had the dew been of that brand well kown as "Mountain Dew," it migh have affected the engineer and fireman, but not the engine or corporation itself, to the extent of relieving it from the obligation of its contracts.

As to the seventh assignment of error, it was only the extra feed occasioned by the delay that the jury was permitted to consider, which was certainly proper. This is shown by the charge of the trial court to the jury on that point, which is as follows: "The court instructs the jury that the plaintiff cannot recover any damages from the defendant in this case on account of any expense incurred by the plaintiff in feeding the cattle in controversy, unless for an extra amount of feed which may have been required by delay in shipping such cattle between Coffeyville, Kansas, and Paola, Kansas."

As to the eighth assignment of error, the court instructed the jury as follows: "If you find from the evidence in this case that the plaintiff is entitled to recover, you should ascertain the amount thereof, and on such amount allow, as additional damages, interest at the rate of six per cent. from and after August 3, 1892." This being an action for damages resulting from the failure of appellant to perform its written contract as a common carrier, we are of the opinion that the foregoing instruction was properly given, and is not subject to the criticism in Eddy vs Lafayette, 1 C. C. A. 441, 49 Fed. 813, cited by appellant.

The court instructed the jury further as follows: "If you find from the evidence that the defendant, acting through its agents and employes, failed and neglected to provide suitable and proper means for carrying plaintiff's cattle to Paola, Kansas, and kept them in the cars an unusual length of time, and handled them in a rough and severe manner, whereby they became injured, and depreci-

Damages.
For what recoverable.

ated in value, then the defendant is liable to plaintiff for the amount of such injury and damage, to be determined by you from the evidence in this case. * * * If, by reason of the defendant's negligence in the management and handling of the plaintiff's cattle on its railway line, they became unusually bruised and injured, and their market value reduced, then the defendant would be liable to the plaintiff for the fair and reasonable amount of such injury and depreciation, to be ascertained by the evidence in this case." Hence, practically, the court limited the recovery to the damages arising in the transportation from Coffeyville to Parsons on appellant's own line; and unless appellant can show prejudicial error was committed by the court, which must have necessarily changed the verdict of the jury from what it ought to have been, the appellant cannot be heard to complain here, and ask for a reversal of the result reached there. We are of the opinion that no intelligent jury could have misapprehended the court's instructions, and that the verdict of the jury was right, and the judgment of the court upon the same was correct, and it is therefore affirmed. Affirmed.

CLAYTON and THOMAS, JJ., concur.