THE WABASH RAILROAD COMPANY

*v.*

GEORGE W. CAMPBELL *et al.*

*Opinion filed December 20, 1905—Rehearing denied Feb. 8, 1906.*

1. CARRIERS—*when conduct of shipper's agent is not contributory negligence.* In an action for damages against a railroad resulting from a mistake of the company in shipping the plaintiff's cattle in cars bearing placards "Southern Cattle," which injured the sale of the cattle, the failure of plaintiff's agent to tear off the cards when he discovered them is not such contributory negligence as reduces the damages, since such act would have been subject to a penalty for interference with a government regulation concerning such placards.

2. SAME—*whether shipper's agent used proper efforts to reduce damages is a question of fact.* Whether the plaintiff's agent to whom cattle were shipped used proper efforts to reduce the damages arising from the fact that the cars in which the cattle arrived at their destination were erroneously placarded "Southern Cattle," is a question of fact not open to review in the Supreme Court in reviewing a judgment for damages affirmed by the Appellate Court.

3. SAME—*correct rule as to measure of damages for negligence in shipping cattle.* In an action to recover damages for the negli-

gence of the carrier in shipping cattle in cars erroneously placarded "Southern Cattle," the correct measure of damages is the difference between the market value of the cattle on arrival at their destination in the condition then existing with reference to the cars, and the market value of cattle of like kind and character at the time; and evidence as to what the cattle subsequently sold for is properly excluded.

4. CONTINUANCE—*when amendment of the declaration is not ground for continuance.* Amendment of a declaration in an action for damages to conform to the evidence in regard to depreciation in value, which had already been introduced without objection, is not ground for a continuance upon the ground of surprise.

5. EVIDENCE—*courts take judicial notice of government regulations.* In an action for damages for shipping the plaintiff's cattle in cars erroneously placarded "Southern Cattle," proof of the government regulations with regard to the quarantine district and the cars carrying cattle from such district is harmless, whether proper or not, since courts take judicial notice of such laws and all persons are presumed to know them.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

This is an action on the case, brought by the appellees, Campbell, Hunt & Adams, against the appellant railroad company. The original declaration, filed January 30, 1903, contained one count, alleging in substance that the defendant operated a railroad between East St. Louis and the city of Sullivan, in Illinois; that, on October 10, 1902, defendant received of plaintiffs at East St. Louis two hundred head of cattle in good condition to be safely carried to Sullivan for a reward; that, by reason thereof, it became bound to furnish and load the cattle in proper cars, free from disease or other infection, and carefully convey the same to said destination; that defendant did not regard this duty, but, through negligence of itself and its servants, the cars were marked, carded and billed "Southern Cattle," meaning thereby that the cattle shipped therein were infected or diseased cattle, by means

whereof said cattle became unsalable and could not be sold, and became greatly depreciated in value, and so remained, so that the plaintiffs were obliged to lay out and did lay out $1300.00 endeavoring to make sale of said cattle, and incurred expenses in their necessary support and maintenance during four months, while prevented from selling them, amounting to $1500.00.

A trial was had, resulting in a verdict for plaintiffs for $760.50. A motion for new trial was made by defendant and overruled, and a motion in arrest of judgment was filed, pending which plaintiffs asked and obtained leave to amend their declaration. Under this leave two additional counts were filed.

The new matter charged in the counts was that the cards, containing the words "Southern Cattle" were in general and exclusive use for the purpose of giving notice that the cars, on which they were fastened, were infected cars and were liable to spread disease, or that the cattle in them were infected or southern cattle, "and as such liable to communicate the disease, generally called 'Texas fever,' to all cattle, with which they might come in contact, of which defendant then and there had knowledge," and said cars were thus rendered unsuitable for the transportation of said cattle, of which defendant had due knowledge.

Appellant by its attorney made and filed a motion to have the verdict set aside and the cause continued, supported by affidavit showing that, in consequence of the new issues introduced into the case by the additional counts, appellant was surprised and unprepared to meet or try the same at that term of court, and stated the facts expected to be proved which would negative the new charges, and that, if the case was continued, the appellant would be able to procure such evidence at the next term of court. The motion was denied, and exception was duly preserved to the court's action. Thereupon, the motion in arrest of judgment was also denied, and exception was duly taken. Judgment was then

entered against the defendant company for $760.50, damages and costs. An appeal was taken from this judgment to the Appellate Court, where the judgment has been affirmed. The present appeal is from such judgment of affirmance, the Appellate Court having granted a certificate of importance. The material facts of the case, as stated by the Appellate Court in their opinion, are as follows:

"On October 27, 1902, the appellees shipped from East St. Louis, over appellant's road, one hundred and twenty head of cattle, contained in four cars, and consigned to one J. C. Bean, appellees' agent at Sullivan, Illinois, to be by him there sold. At the time of such shipment there were in force certain rules and regulations, promulgated by the Department of Agriculture of the United States, for the purpose of regulating and controlling the shipment from within the limits of a certain quarantine district, thereby established, of cattle originating within such district. Such cattle were commonly known as and called 'southern cattle,' and were generally infested with what are called 'cattle tick,' by reason of which native cattle, coming in contact with them, were liable to contract splenetic or Texas fever. It was provided by said regulations that no cattle should be transported from the quarantine district therein established, and otherwise known as the 'scheduled district,' except upon condition that they should be placed in pens or yards set apart for infected cattle, to which no other cattle should be admitted; that all cars, used for the transportation of the same, should be cleansed and disinfected as soon as possible after unloading, and before they were again used to transport animals; that all cars, carrying cattle from the 'scheduled district,' should bear on both sides thereof, printed placards, to be affixed by the carrier, stating that they contained southern cattle, and further that each of the way-bills, accompanying the shipments, should have plainly written or stamped upon its face a similar statement. Through the negligence of the servants of appellant, cards of this description were attached

to the cars containing appellees' cattle, although the same were not southern cattle and did not come from the scheduled district. The evidence tends to show that, upon the arrival of the cattle at Sullivan, the presence of the cards prevented their sale at the market price, by creating a suspicion or impression among possible purchasers, that they had been shipped from the scheduled district, and for that reason were likely to have and communicate to other cattle the splenetic or Texas fever."

C. N. Travous, for appellant.

R. M. Peadro, for appellees.

Mr. Justice Magruder delivered the opinion of the court:

The cattle of appellees were shipped over appellant's road from East St. Louis to Sullivan in cars, upon which were tacked yellow cards, ten by twelve inches in size, bearing the words "Southern Cattle." The cars containing the cattle were four in number. One of these cars arrived at Sullivan on Friday or Saturday, and contained about twenty-five head of cattle. The other three cars, containing some ninety or ninety-five head of cattle, arrived at Sullivan on Monday. It is conceded by the appellant that the cattle were by mistake put in the cars, having on them labels containing the words "Southern Cattle." The cattle shipped were not southern cattle, and did not come from the scheduled district. The cars, in which the cattle were transported, were not defective in any respect, nor infected with any disease. When, however, the cattle arrived at Sullivan, the presence on the cars of the yellow cards, containing the words "Southern Cattle," prevented purchasers, present in the yards when the cattle arrived, from purchasing any of them. The agent of appellees was unable to sell them at the market price, because the labels upon the cars created a suspicion, that the

cattle had been shipped from the "scheduled district," and were probably infected with what was known as the "Texas fever." The evidence is quite clear, that the mistake or negligence of the defendant company in shipping the cattle in cars, labeled as aforesaid, prevented their sale.

*First*—The first point, made by appellant, is that appellees were guilty of contributory negligence, upon the alleged ground that their agents did not remove the cards from the cars, and because, after the cars arrived at Sullivan, they did not make reasonable efforts to dispel the suspicions, or erroneous impressions, as to the condition or character of the cattle, which the cards in question gave rise to.

While the cattle were in transit and before Sullivan was reached, the conductor of the freight train called the attention of one Perry, an agent of the appellees who accompanied the cattle, to the fact, that the cards in question were upon the cars and that the cattle thereby transported were designated as diseased or infected cattle. Upon the arrival of the train at the next station, Perry, who denied that the cattle were southern cattle, dismounted from the train, and, for the first time, as it appears, saw that the cards were upon the cars. It is insisted by the appellant that it was Perry's duty to have torn the cards off the cars, as he knew that the cattle were not southern cattle, and the cars were not infected. The failure of Perry thus to tear the cards from the cars is said by the appellant to be contributory negligence on the part of the appellees.

In support of the contention, that the appellees were thus guilty of contributory negligence, the doctrine is invoked that, where a party is injured by a breach of contract or tort, it is his duty to make reasonable effort to avoid damages therefrom; and that such damages, as may by reasonable diligence on his part be avoided, are not to be regarded as the natural and probable result of the defendant's acts. In other words, there can be no recovery for damages, which might have been prevented by reasonable efforts on the part

of the person injured. (*Hartford Deposit Co.* v. *Calkins,* 186 Ill. 104; *Simpson* v. *Keokuk,* 34 Iowa, 568; *Chicago and Alton Railway Co.* v. *Buck,* 14 Ill. App. 394). The doctrine is thus stated in *Simpson* v. *Keokuk, supra:* "If the plaintiffs, by the use of ordinary diligence and efforts, and at a moderate expense, might have prevented the damage, it seems necessarily to follow that their negligence contributed to the injury; and this, upon a well-settled rule, would defeat the plaintiff's recovery."

We are of the opinion that the failure of Perry, the agent of appellees accompanying the cattle, to tear the cards in question from the cars, did not operate to charge appellees with contributory negligence. The tacking of these cards, with the words "Southern Cattle" upon them, upon the cars, was a government regulation. The government required them to be placed upon the cars under regulations, adopted for the purpose of controlling shipments from within the limits of a certain quarantine district. If Perry had attempted to remove these cards, he would have been subject to a penalty for interfering with a government regulation. It was not, therefore, his duty to remove the cards in the manner insisted upon by the appellant.

It is also said that, when the cars arrived at Sullivan, Bean, the agent of the appellees at that point, to whom the cattle had been shipped, did not use proper efforts to remove from the minds of parties, who were at the yards for the purpose of purchasing cattle, the impression, created by the existence of the labels upon the cars. In other words, it is said that Bean, knowing that the cattle were not southern or diseased cattle, and had not come from the quarantine district, and that the cars were not infected, should have proceeded to inform the possible purchasers of those facts. It does appear that Bean telegraphed to the agent of appellees at East St. Louis the fact of the existence of the cards upon the cars, and their effect upon purchasers, and that an agent of appellees at East St. Louis called upon the agent

of the defendant company at East St. Louis in regard to the matter, but the latter refused to pay any damages. Whether or not proper efforts were made at Sullivan by the agent or agents there of the appellees to remove the impressions, created against the character of the cattle, was a question of fact that was presented to the jury by the instructions of the court, and has been decided against appellant by the judgments of the lower courts.

The proof showed that one of the representatives of the appellant told one of the agents of the appellees, that appellees should have taken the cards off the cars when he discovered that they were there. But no point was made upon the trial below, by objection to the evidence, that appellees or their agents were guilty of any contributory negligence in failing to tear the cards from the cars, or otherwise to remove the unfavorable impression, created by the presence of the cards upon the cars. For the reasons above stated, we are of the opinion that the objection thus made is not well taken.

*Second*—It is next insisted by appellant that the court below did not adopt or announce to the jury a proper rule in regard to the amount of damages to be recovered by the plaintiffs on account of the injury suffered. It is said by the appellant that the appellees were only entitled to recover as damages the cost of preventing or removing the injurious effect of the cards, and of the support and maintenance of the cattle, pending necessary delay, if any, in their sale on account of the presence of these cards upon the cars. For this reason it is said that the court erred in giving for the appellees the fourth instruction, which was given for them, and which made the following announcement: "The measure of damages in this case, if you find there has been any damage, is the difference, if any, which has been shown by the evidence, between the market value of the cattle on arrival at Sullivan, Illinois, in the condition then existing with reference to the cars, and what the market value of such

cattle of like kind and character was at said time, as shown by the evidence."

The cause was tried by both parties upon the theory announced in the fourth instruction. The proof tended to show that the market value of the cattle at the time they arrived in Sullivan was $4.25 to $4.50 per hundred pounds. The testimony also showed that, by reason of the unfavorable impression created in regard to the cattle by the presence of the cards upon the cars, their market value was reduced some $8.00 or $10.00 per head. Some of the testimony was to the effect that their value was reduced about $2.50 per hundred. Other testimony was to the effect that their value was reduced $1.00 per hundred. There is no question but that the amount of the verdict $760.50 was considerably less than the amount of the damages, as fixed by the weight of the testimony. Indeed, the appellant makes no objection, as we understand its contention, as to the amount of the damages, but only as to the rule adopted in ascertaining the damages. Appellant introduced witnesses, of whom it made inquiry as to market value of cattle in Sullivan at that time.

The rule, adopted by the court in regard to the measure of damages, is the same which was announced by this court in the recent case of *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Patton,* 203 Ill. 376. In the latter case it was held that the measure of damages, in an action for injuries to horses in shipment, is the difference between what the horses were worth when received for shipment, and what they were worth when they reached their destination; and it was also there held that, where plaintiff, in an action for injuries to horses in shipment, was obliged to keep the horses for a month after their arrival at their destination on account of their damaged condition, evidence as to what they sold for after he prepared them for market was immaterial, and its admission was properly refused. Appellant here complains that it was not allowed to ask questions of the witnesses of appellees for the purpose of showing

what the cattle were subsequently sold for, but under the ruling in the *Patton case, supra,* such testimony was properly excluded.

*Third*—After the motion for new trial had been denied, the appellees asked leave to amend their declaration. Such leave was granted, and they filed two additional counts. The original count had charged that damages had been incurred by reason of the fact, that appellees were obliged to and did lay out money in endeavoring to make a sale of the cattle, and incurred expenses in their necessary support and maintenance for the time, during which they were prevented from selling them. In the additional counts it was charged that damages were suffered by reason of the depreciation caused in the market value of the cattle because of the cards placed upon the cars, as above stated. Appellant made a motion for continuance, when appellees were allowed thus to amend their said declaration, upon the alleged ground that it was surprised. The refusal of the court below to grant the continuance is here urged as a ground for reversal. It is apparent, however, that the matters, stated in the additional counts, did not constitute a new cause of action, but merely enlarged the averments of the original declaration as to the uses and purposes, to which the cards in question were generally devoted. In other words, no new issues were presented by the additional counts. The allegations of the additional counts merely conformed to the evidence in regard to depreciation in value, which had already been introduced by both parties, so that the amendment allowed did not require the introduction of any new evidence. Moreover, the appellant in the trial court did not make the objection that there was a variance. No question of variance was raised during the trial. It was not claimed that the testimony in regard to damages, suffered by depreciation in the market value of the cattle, was improperly introduced under the allegations of the original declaration, consisting of one count.

219—21

*Fourth*—Some other objections are made in regard to the giving and refusal of instructions and the admission and exclusion of evidence, but they are disposed of by the considerations already presented.   For instance, complaint is made that the trial court refused to give the seventh instruction asked by the appellant, but that instruction announced to the jury that the failure of Perry to remove the cards from the cars constituted negligence.   The instruction was properly refused for the reason already stated.   Complaint is also made that the trial court refused the tenth instruction, asked by the defendant upon the trial below, but that instruction assumed that reports were circulated by the appellees' agents and also by the appellant's agents, which were detrimental to the character of the cattle.   There was no evidence, upon which any statement to the jury in regard to such reports, was properly based.   The act of the appellant, which was shown to have interfered with the sale of the cattle, was the putting of the cards upon the cars, and not the circulation of any report.   Accordingly, the instruction was properly refused.

It is also objected that the court allowed some of the witnesses to testify as to the government requirements in regard to the quarantine district, and as to the regulations in regard to the cars, which carried cattle, coming from such district.   Whether this evidence was proper or not, it could have done no harm, as courts take judicial notice of such laws, and all persons are presumed to know them. They are especially familiar to farmers and men dealing in cattle and other stock.

We see no reason for reversing the judgments of the lower courts.   Accordingly, the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.                              *Judgment affirmed.*