## The Wabash Railroad Company v. George E. Foster, et al.

1. COMMON CARRIER—*contract by, for exemption from liability, invalid.* A common carrier cannot by contract exempt itself from liability for a failure on its part to exercise ordinary care.

2. MEASURE OF DAMAGES—*in action for delay in transportation.* The measure of damages in an action for delay in transporting personal property is the difference between what such property was worth when received for shipment and what it was worth when it arrived as its destination.

Action of assumpsit. Appeal from the Circuit Court of Moultrie County; the Hon, JAMES W. CRAIG, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed June 8, 1906.

E. J. MILLER, for appellant.

HARBAUGH & THOMPSON, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

On April 3, 1905, appellees delivered to appellant at Lovington, Illinois, for shipment to Chicago two carloads of horses, thirty-eight head in all. Upon the arrival of the cars in Chicago, on the following day, the seal on the door of one of the cars was broken and one of the horses was missing. On August 7, 1905, and again on September 4, 1905, appellees delivered to appellant at Lovington other carloads of horses for like shipment, which appellees claim were delayed in transit by the negligence of appellant. This suit was brought to recover the value of the horse lost and the depreciation, by reason of delay, in the value of thirty-eight horses. There was a verdict and judgment in the Circuit Court against appellant for $480.

The evidence tends to show that the freight train usually carrying live stock from Lovington to Bement, a distance of fifteen miles, was scheduled to leave Lovington at 4:45 o'clock P. M.; that live stock leaving Lovington in the evening usually arrived in Chicago the following morning; that on August 7th and September 4th, the train was late in leaving Lovington and that the horses did not arrive in Chicago until the evening of August 8th and September 5th.

There is some contradiction in the evidence with reference to the time the train left Lovington on August 7th and September 4th, but we think the jury was warranted in finding that it left Lovington in ample time to have enabled appellant in the usual course of its business, to carry the horses on its regular train scheduled to leave Bement for Chicago at 10:15 o'clock. P. M. The delay in leaving Bement and in running the train from Bement to Chicago is wholly unexplained by appellant, and there is evidence tending to show that such delay was inexcusable and due to carelessness on the part of appellant.

It is insisted by appellant that, by the terms of the shipping contract in evidence, appellees assumed all risk incident to delay, except such as was occasioned by the gross negligence of appellant. In B. & O. S. W. R. R. Co. v. Fox,

113 Ill. App. 180, and Wabash R. R. Co. v. Johnson, 114 Ill. App. 545, this court had occasion to review the authorities bearing upon the question of the liability of a common carrier, and it was there held that a common carrier could not, by contract, exempt itself from liability for a failure on its part, or that of its servants, to exercise ordinary care in the transaction of its business. We adhere to the views expressed in those cases.

The true measure of damages with respect to the horses alleged to have been injured by reason of the delay in transportation, is the difference between what they were worth when received for shipment, and what they were worth when they arrived at their destination. Wabash R. R. Co. v. Campbell, 219 Ill. 312. This rule as to the measure of damages was substantially applied by the court in admitting evidence of the depreciation in the value of the horses from the time they left Lovington until they arrived at Chicago, and in the instructions given to the jury upon that question. The depreciation in the value of the horses from the time they left Lovington until they arrived at Chicago must of necessity have been the difference between what they were worth when received for shipment, and what they were worth when they arrived at their destination.

Notwithstanding the provisions in the contract of shipment whereby appellees agreed to release appellant from all claims for damage or injury to or loss of the horses caused by any defects in the doors of the cars or their fastenings, and in consequence of the escape of any of the horses through the doors and openings in the cars, counsel for appellant tried the case in the court below and procured an instruction to be given upon the theory that appellees had made a *prima facie* case entitling them to recover the value of the horse lost *in transit*, by proof that the horse did not reach its destination, and that the burden was upon appellant to show that the horse took sick *en route* and died without the fault of appellant.

There is no competent proof in the record tending to

show that the horse was taken sick *en route* and died either with or without the fault of appellant, but appellant having adopted such theory of defense in the trial court can not now urge another and entirely different theory of defense on its appeal in this court.

The court did not err in admitting in evidence copies of the correspondence between the attorney for appellees and the general freight agent of appellant, relative to appellees' claim for damages and it clearly justified the jury in finding that the provision in the contract of shipment requiring appellees to file their claim for damages within ten days after the horses were removed from the cars, had been waived by appellant.

The errors assigned and urged for a reversal of the judgment, not heretofore specifically disposed of, relate to rulings of the court upon· instructions given and refused, but as such rulings were in consonance with and invited by the position assumed by appellant in the trial court, it is in no attitude to complain.

The judgment is affirmed.

*Affirmed.*