# ST. LOUIS & S. F. R. CO. v. PIBURN.

No. 1197.   Opinion Filed November 18, 1911.

(120 Pac. 923.)

1. **CARRIERS—Shipment of Stock—Right of Shipper—Failure to Feed and Water.** Rev. Stat. U. S., sec. 4386 (U. S. Comp. Stat. 1901, p. 2995), requiring railroad companies, under a penalty imposed, payable to the United States, to unload animals shipped, at stated periods, for rest, food, and water, gives to a shipper whose animals are injured by failure of the company to do so a cause of action enforceable in a state court.

2. **SAME — Shipment of Stock — Facilities for Feed and Water.** Under U. S. Rev. Stat., sec. 4386 (U. S. Comp. Stat. 1901, p. 2995), it is the duty of a railroad company in carrying on interstate shipment of animals, not only to unload the same within the periods mentioned in the statutes, but to provide facilities reasonably sufficient and suitable for watering and feeding the animals and for allowing them an opportunity for rest.

3. **SAME — Live Stock Shipment — Failure to Feed and Water — Damages.** In a suit for damages to an interstate shipment of sheep, against a railroad company, based on its negligence in failing to unload the animals for water, food, and rest as required by U. S. Rev. Stat., sec 4386 (U. S. Comp. Stat. 1901, p. 2995), the measure of damages is the difference, if any, in the fair market value of the sheep at the point of destination in the condition in which they were delivered and what it would have been at such point of destination if they had been properly unloaded and provided with food, water, and rest as required by statute.

4. **SAME — Interstate Shipment — Failure to Feed and Water — Evidence.** In a suit based on failure of a railroad company, in transporting an interstate shipment of animals, to comply with the duties imposed on it by U. S. Rev. Stat., sec. 4386 (U. S. Comp. St. 1901, p. 2995), where the proof shows that the railroad was in possession of the animals about 40 hours, and actually unloaded the animals within the period named in the statute, but unloaded them in pens so small that the animals were crowded and jammed in the pens as close together as in the cars, and could not lie down or move about, and where no troughs or other facilities were provided for watering or feeding them, and no water was provided, held, that the proof justified a finding that the railroad had not performed the duty required of it by the statute.

(Syllabus by Brewer, C.)

*Error from District Court, Garfield County; M. C. Garber, Judge.*

Action by J. A. Piburn against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans,* *R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*Parker & Simons,* for defendant in error.

Opinion by BREWER, C.  This is a suit to recover damages for negligence in transporting an interstate shipment of sheep for failure to observe duties imposed by the United States Statutes, commonly called the "28-hour law."

The facts are substantially as follows:  On November 3, 1906, the defendant in error, hereafter called plaintiff, shipped 1,600 sheep from Texline, Tex., to Lamont, Okla.  The shipment was delivered to the Ft. Worth & Denver City Railroad at Texline, was carried by it to Quanah, Tex., where it was delivered to the plaintiff in error, hereafter called defendant.  The sheep were loaded into four double-decked cars at Texline at about 7 o'clock p. m. November 3d, and were carried, without being unloaded, to Quanah, arriving there about 11 o'clock p. m. of November 4th, covering a period of continuous travel of 29 hours.  The plaintiff accompanied the sheep, and at Quanah tried to get the Ft. Worth & Denver City Railroad to unload and allow him to care for his sheep, but it was not done.  That, upon arriving at Quanah, the cars of sheep were switched onto a sidetrack to be picked up and put into defendant's train.  There is some disagreement as to when the possession of the initial carrier ceased and that of defendant began, but the evidence seems to show that the sheep remained in the switch yards at Quanah, from arrival, until 7 o'clock a. m. November 5th, when defendant admits receiving the cars.  The evidence shows that the sheep were not unloaded at Quanah, and that next morning the plaintiff was at the depot of defendant before its station agent arrived, and when a man arrived and went to work whom plaintiff thought to be the agent, the situation of the sheep and the fact of their long continuous journey without unloading or op-

portunity being given for feed, water, or rest was explained to him and a demand made that they be at once unloaded for this purpose. It was not done. The sheep had then been in the cars for about 36 hours. Plaintiff also informed the conductor of defendant's train of the situation of the sheep after leaving Quanah. The evidence of defendant shows it took charge of the sheep at 7 a. m. and held them in the yard of Quanah for 2 hours, then put the cars in a train. The evidence of defendant showed that the sheep had been unloaded during the trip, by a notation on the waybill, but it was not contended in the trial by any witness that they had in fact been unloaded. After putting the cars into a train the defendant carried them from Quanah to Snyder, arriving there about 4 or 5 o'clock p. m. November 5th, where they were unloaded into stock pens. When they arrived at Snyder the sheep had been in the cars continuously for about 46 hours. The plaintiff tried to get the trainmen to unload the sheep at Bessie, also at Enid, without avail. At Snyder where the sheep were unloaded there were four stock pens, but the proof shows only three and a small runway were in a condition to restrain animals. These pens were 30 feet square. The runway is described as a small way from cars down connecting with the pens; its dimensions are not given, but the evidence shows that this runway was smaller than any one of the pens. The defendant afforded no facilities at Snyder for feeding, watering, or affording rest to the animals. The stock pens had no watering troughs, and neither vessels nor water was furnished or available. The plaintiff went up town and brought some hay, but testifies that the animals were so jammed and crowded in the pens that they could not eat. Plaintiff attempted to get water for them but could not, and they had no water at Snyder, and little, if any, food. They remained crowded in the pens at Snyder for 17 hours, and were then carried to Lamont, Okla., their point of destination, without unloading or any opportunity for food or water. Including the 17 hours in the stock pens at Snyder, the sheep were in transit about 82 hours. All the proof shows that when unloaded at Lamont, they were emaciated, shrunken, weak, and in

bad condition. The plaintiff sued for $1,600 on his first count, and in another count involving another shipment, but practically the same issues, for $260. The jury awarded him a general verdict for $1,000. The defendant answered with a general denial, and alleged that the loss, delay, or damage, if any, was caused by the initial carrier. There was no claim made by defendant that it was prevented from unloading by storm or other accidental cause.

Of the numerous assignments of error alleged, it appears from defendant's brief that its main complaint is based on two grounds: (1) To the admission of incompetent evidence by the court on the question of the damage to the sheep, and the rejection of certain evidence offered by defendant relative to certain notations on the waybill under which the sheep were carried. (2) To the instructions of the court as to the measure of damages, and the refusal of the court to give two instructions asked by defendant.

This suit is based on a liability created by federal statute. The sections of the U. S. Rev. St. applicable are as follows:

"Sec. 4386. Transportation of Animals. No railroad company within the United States whose road forms any part of a line of road over which cattle, sheep, swine or other animals are conveyed from one state to another, or the owners or masters of steam, sailing or other vessels carrying or transporting cattle, sheep, swine or other animals from one state to another, shall confine same in cars, boats or vessels of any description for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes. In estimating such confinement the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon contingencies hereinbefore stated." (U. S. Comp. St. 1901, p. 2995.)

"Sec. 4387. Animals to be Fed and Watered—Lien. Animals so unloaded shall be properly fed and watered during such rest by the owner or person having the custody thereof, or in

case of his default in so doing, then by the railroad company or owners or masters of boats or vessels transporting the same at the expense of the owner or person in custody thereof; and such company, owners or masters shall in such case have a lien upon such animals for food, care and custody furnished, and shall be liable for any detention of such animals." (U. S. Comp. St. 1901, p. 2996.)

Under this statute it is the duty of the carrier to not only unload the animals within the stated period, but it is its duty to provide reasonably suitable conveniences for feeding, watering and caring for the animals, and a place reasonably suitable and sufficient to allow the animals to obtain rest. *Chesapeake & O. R. Co. v. Amer. Exch. Bank,* 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449; *Brockway v. Amer. Exp. Co.,* 168 Mass. 257, 47 N. E. 87; *Railway Co. v. Adams,* 42 Ill. 474, 92 Am. Dec. 85; *Railway v. Hamilton,* 76 Ill. 393. And that an individual, who has suffered damage to an interstate shipment of animals, has a cause of action against the carrier, where the damage is occasioned by a failure on the part of the carrier to perform the duty imposed by this statute, is sustained by the decided weight of authority. *Nashville, C. & St. L. Ry. Co. v. Heggie et al.,* 86 Ga. 210, 12 S. E. 363, 22 Am. St. Rep. 453; *Chesapeake & O. Ry. Co. v. Amer. Exch. Bank,* 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449; *Brockway v. Amer. Exp. Co., supra; Hale v. Missouri Pac. Co.,* 36 Neb. 266, 54 N. W. 517; Thompson on Negligence, vol. 5, sec. 6583; *Burns v. Chicago, M. & St. P. Ry. Co.,* 104 Wis. 646, 80 N. W. 927.

The defendant urges that the court erred in sustaining an objection to certain questions propounded to the witnesses Hill and Clark. The witnesses were shown certain papers purporting to be copies of the waybills upon which the sheep were transported, and were asked regarding contents. The objection that these documents had not been sufficiently identified or authenticated as copies of the original waybills and no foundation laid for secondary evidence was sustained, and we think properly, by the court. The witnesses did not make the copies, knew nothing of the waybills except from hearsay, and claimed another

person made the copies from what purported to be the originals. No sufficient excuse was given for offering this class of evidence. But even if this evidence was competent, its rejection would not be reversible error in this case, because the error, if it had been error, was cured fully by the allowance of full proof of the notations made on these waybills, by others of defendant's witnesses, who showed themselves more competent to testify in regard to the matter.

Defendant also urges that the admission of certain evidence by plaintiff, relative to proof of damage, was error. This evidence went, in brief, to this extent: Plaintiff was allowed to state the average weight of these sheep when sold at Kansas City some time after the transactions sued on. No attempt was made to prove value in Kansas City. The evidence was offered merely as a circumstance connected with other proof, tending to shed light on the extent of injuries to the animals, and the retarding of their growth and development, they being young growing animals.

During the progress of the trial, and when the evidence of damage was being presented, a colloquy occurred between the court and counsel on both sides as to the measure of damages and the proper proof thereon. Plaintiff's counsel contended for this rule as stated by him:

"By the Court: Q. What do you contend the measure of damages to be, Mr. Simons? By Mr. Simons, of counsel for plaintiff: A. I contend the measure of damages to be, if your honor please, the difference between the reasonable market value of the sheep in the condition which they would have been, had they been afforded proper treatment during the journey at the place of their destination and the reasonable market value they had in the condition in which they were delivered at their destination."

This rule as stated by counsel is substantially correct. *M., K. & T. Ry. Co. v. Truskett,* 2 Ind. T. 633, 53 S. W. 444; *Id.,* 104 Fed. 728, 44 C. C. A. 179, affirmed 186 U. S. 480, 22 Sup. Ct. 943, 46 L. Ed. 1259; *Cleveland, C., C. & St. L. Ry. Co. v. Patton,* 104 Ill. App. 550, 203 Ill. 376, 67 N. E. 804; *Wabash R.*

*Co. v. Campbell,* 219 Ill. 312, 76 N. E. 346, 3 L. R. A. (N. S.) 1092; *Ill. Cent. Ry. Co. v. Holt* (Ky.) 92 S. W. 540; *Matney v. C., R. I. & P. Ry. Co.,* 75 Mo. App. 233; *Texas P. Ry. Co. v. Murtishaw,* 34 Tex. Civ. App. 447, 78 S. W. 953; *Gulf, C. & S. F. R. Co. v. Ware & Walker,* 34 Tex. Civ. App. 455, 78 S. W. 961; *St. L., I. M. & So. Ry. Co. v. Burns* (Tex. Civ App.) 80 S. W. 104.

The proof of damages in this case was ample and was introduced in conformity to the rule announced. The particular questions objected to were not offered on the measure of damage, but merely as a circumstance, and, if not strictly competent, were altogether harmless.

The defendant complains of the failure of the court to give instructions 1 and 4 asked by it. Instruction 1, in substance, asked the court to instruct the jury that if defendant received the shipment from the initial carrier, believing that it had been unloaded at Quanah, and that after receiving it defendant handled it in its usual and customary way, and the sheep received the usual and customary attention given live stock, that a verdict should be returned for defendant.

The instruction No. 4, asked and refused, in substance, was a request that the jury be instructed that, in the absence of other evidence, the defendant had a right to rely on the notation on the waybill of the initial carrier as to the unloading of the animals. Neither of these instructions were proper, under the pleadings and proof in this case, and both were properly refused.

In the first one the court is asked to declare the uses and customs of the defendant as being a sufficient performance of its statutory duty, and that the road's belief that the sheep had been unloaded at Quanah, coupled with the handling of the shipment in its usual way, was an unanswerable defense to the whole cause of action.

The other instruction asked was equally erroneous. It practically asked the court to tell the jury to disregard the evidence of plaintiff tending to show that the defendant had actual notice that the sheep had not been unloaded at Quanah, and both the

requested instructions were erroneous for the further reason that they did not take into account another theory of this case, upon which the evidence fully justified a recovery. Eliminating entirely the handling of the shipment by the initial carrier, and proceeding to view the conduct of defendant, only after it received the shipment at Quanah, the evidence justified the jury in treating the carriage of these sheep from Quanah to Lamont as a violation of the statute sued on.

There were three pens 30x30 feet square and a runway not so large as the pens; but assuming it to be as large, a little problem in mathematics will demonstrate that the entire space afforded by defendant for these animals to be fed, watered, and to repose in, from the effects of their arduous journey, was the spacious area of 12x27 inches to the individual sheep. The jury had these figures before them and may have made the computation. Besides it is shown by the evidence that there were no troughs or vessels for watering or feeding, and neither food nor water to use in them had they been there. The plaintiff was able to get hay, but could get no water, and none was provided. Besides, the plaintiff testifies, and the size of the pens bears him out, that the animals did not have room or any opportunity to eat the hay he provided, or to rest or lie down.

The mere physical unloading of the sheep did not, standing alone, amount to a compliance with either the letter or spirit of the statute, or to a discharge of the duty imposed on the carrier by it. It was as incumbent on the carrier to provide facilities reasonably sufficient for feeding, watering, and affording rest to the animals as it was to unload them. And it has been held that, even where the owner or custodian undertakes the attention of the animals, yet that if he, for any cause, neglects or fails ot care for them as required by the statute, it is the duty of the carrier to do so, and collect all charges and expense therefor in the manner authorized in the statutes. *Chesapeake & O. Ry. Co. v. Amer. Exch. Bank,* 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449.

St. Louis & S. F. R. Co. v. Piburn.

There have been various reasons mentioned by different courts for the passage of this law. Some think it was passed for reasons of humanity; others that it was in aid of a healthful food supply for the nation; but, whatever the reason given, practically all unite in declaring it a wise and meritorious enactment.

Therefore, we say that, under the proof in this case, the jury was abundantly justified in finding that the defendant had negligently violated its duty to the damage of the plaintiff, and this independent of the conduct of the initial carrier. And under this view of the case, if for no other reason, the instructions asked by defendant were properly refused.

The defendant offered no objections to the instructions given by the court to the jury, and this court will not review instructions given on the trial of the cause, unless the instruction complained of in this court was excepted to at the time. *Everett v. Akins,* 8 Okla. 184, 56 Pac. 1062; *Boyd v. Bryan,* 11 Okla. 56, 65 Pac. 940; *Glaser v. Glaser,* 13 Okla. 389, 74 Pac. 944; *Taylor v. Johnson et al.,* 23 Okla. 50, 99 Pac. 645.

There appearing no error in the proceedings, the cause should be in all things affirmed.

By the Court: It is so ordered.

All the Justices concur.