VON POLLNITZ *v.* THE STATE.

1. What the deceased said at the door of the room in which she was beaten, on coming out immediately after the beating took place, was admissible in evidence as a part of the *res gestæ.*
2. The sayings of the deceased admitted as dying declarations, and not objected to at the trial, were properly received. This court, in the absence of anything showing the contrary, will presume that the trial judge did his duty in passing upon the admissibility of such evidence as a preliminary question before allowing it to go to the jury.
3. A practicing physician is presumptively competent to give evidence, as an expert, touching the probable effect of wounds such as other witnesses describe, with reference to their adequacy and tendency to produce death. No question was raised as to whether the examination should have been on a hypothetical, rather than on the actual, case.
4. The evidence showing that the manner of inflicting the mortal wounds was by striking, throwing down and stamping upon the deceased, she being a woman probably in a pregnant condition and her assailant being her husband, and there being no provocation shown, and no mitigating circumstances, and he in his statement to the court and jury denying that he used any violence, the failure of the court to charge the jury upon the law of manslaughter, voluntary or involuntary, was not error.
5. That the solicitor-general used grossly improper language touching the defendant in his argument to the jury is not cause for a new trial, no objection being made thereto by the accused or his counsel at the time, and no ruling of the court thereon being invoked or made.
6. The evidence warranted the verdict, and there was no error in denying a new trial.

March 10, 1893.

Indictment for murder. Before Judge BOWER. Decatur superior court. November term, 1892.

F. S. Harrell and A. H. Russell, for plaintiff in error. J. M. Terrell, attorney-general, and W. N. Spence, solicitor-general, by brief, *contra*.

Bleckley, Chief Justice.

1. The deadly assault was made in a closed room in a boarding-house, the room occupied by Von Pollnitz and his wife, and though some of the blows as well as the outcry of the wife were heard by one or more of the witnesses, there was no eye-witness to the infliction of the blows. Immediately after the beating took place the door of the room was opened, and the wife, on emerging from it, made certain declarations which were admitted in evidence. These declarations were a part of the *res gestæ* and as such were competent evidence.

2. Certain sayings of the deceased were admitted as dying declarations. They were not objected to, and seem to have been properly received. It is contended that the trial judge did not pass upon their admissibility as a preliminary question before allowing them to go to the jury. It does not affirmatively appear that he did or did not. It was his duty to do it, and we cannot presume that he failed to perform that duty properly and faithfully.

3. A practicing physician was allowed to give in evidence his opinion as an expert touching the probable effect of wounds such as other witnesses described, though he had never seen or examined the wounds himself. He gave his opinion with reference to their adequacy and tendency to produce death. It appearing that he was a practicing physician, he was a competent witness to form and express an opinion upon this subject as an expert. The examination should have been on a hypothetical rather than on the actual case. But no question was raised as to this point, his competency and not the mode of his examination being the matter raised by objection and submitted to the court for decision.

4. It is complained that the court gave no instruction

to the jury touching the law of manslaughter, voluntary or involuntary. The manner of inflicting the mortal wounds was, according to a fair if not a necessary inference from the facts in evidence, by striking, throwing down and stamping upon the deceased, who was at the time probably in a pregnant condition. There could be no voluntary manslaughter without some provocation, and there was not the slighest evidence of any provocation whatever; and the accused did not set up or pretend that there was anything involuntary either in the blows or in their effect. He neither proved nor stated anything in mitigation, but in his statement to the court and jury denied that he used any violence. It did not appear and was not suggested that any other person was in the room by whom the injuries to the wife could or might have been inflicted. If they were the cause of her death which occurred shortly thereafter, although there might be a guess or conjecture that the killing was involuntary, yet unless there had been some evidence or some statement of the prisoner tending to show that it was so in fact, or unless that defence had in some way been set up or insisted upon instead of being wholly negatived by the prisoner's statement, we cannot rule that the trial judge was bound, as matter of law, to submit any question concerning it to the jury. We do not say that it would have been unlawful for him to do so if such a course had been dictated by his own conscience, but we are clear that the law did not impose it upon him as an official duty.

5. The language imputed to the solicitor-general, as having been used in his argument to the jury touching the defendant, was grossly improper, but no objection was made thereto by the accused or his counsel at the time, and no ruling thereon by the court was invoked or made. This being so, it was not cause for a new trial.

6. The impression made by the transcript of the record,

taken as a whole, is that the accused was indiscreet and unwise both in conduct and expression whilst his trial was in progress, and that, owing to the youth and inexperience of the zealous and faithful young gentlemen who were assigned by the court to act as his counsel, he was not defended with the tact and skill which older and more experienced counsel might have brought to bear in his behalf. Yet we can discover no reason for holding that the conviction was illegal or improper. The evidence, if it did not require, certainly warranted the verdict, and there was no error in denying a new trial.                    *Judgment affirmed.*