## HENRY JOHNSON v. STATE.

No. A-315.    Opinion Filed February 6, 1911.

(113 Pac. 552.)

1. **HOMICIDE — Self-Defense — Reasonable Doubt — Instructions.** Where the issue of self-defense is presented by the testimony, the court should instruct the jury that, if the testimony upon this point raises in their minds a reasonable doubt as to whether or not the defendant at the time of. the homicide, acted in good faith and upon reasonable appearances of danger of receiving great bodily harm or death at the hands of his assailant, the jury should resolve that doubt in favor of the defendant, and acquit him.

2. **SAME—Sufficiency of Evidence.** It is not necessary that the jury should find that a defendant was justified in acting in his own necessary self-defense before they can acquit him in a prosecution for murder, but if the evidence upon the subject of self-defense raises in their minds a reasonable doubt as to whether or not the defendant was justified in acting in his own necessary self-defense, at the time he fired the fatal shot or struck the fatal blow, then the jury should resolve that doubt in favor of the defendant, and acquit him.

3. **APPEAL—Review—Improper Remarks of Prosecutor.** Improper remarks alleged to have been made by a county attorney in his closing argument to the jury will not be considered upon appeal, unless said remarks were objected to at the time made, and a motion was made requesting the court to exclude such remarks

from the jury; and this must be made to appear by proper recitals in the case-made, duly certified to by the trial judge.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County; John H. King, Judge.*

Henry Johnson was convicted of manslaughter, and he appeals. Reversed and remanded.

Appellant was convicted for manslaughter in the first degree, and his punishment was assessed at imprisonment in the penitentiary for a period of four years, and he appealed. Reversed and remanded.

*J. E. Wyand* and *S. M. Rutherford,* for appellant.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. First. Upon the trial of this case, in paragraph 12, the court instructed the jury as follows:

"You are instructed that a person has a right to fight in his necessary self-defense and to take the life of his assailant if he believes in good faith that it is necessary for him to do so, in order to prevent great bodily harm or death at the hands of his assailant; but in such case it must appear to the defendant, viewing the situation from his standpoint at the time, that the danger was so imminent and pressing, that it was necessary for him to act in order to prevent receiving great bodily harm or death at the hands of his assailant."

An exception to this instruction was properly reserved at the time it was given. The instruction should have gone further and told the jury that, if the evidence on this point was such as to raise in their minds a reasonable doubt as to whether or not the defendant at the time of the homicide acted in good faith and upon reasonable appearances of danger of then receiving great bodily harm or death at the hands of his assailant, then the jury should resolve that doubt in favor of the defendant and acquit him.

Second. In paragraph 13 of the charge the court instructed the jury as follows:

"You are instructed that if you believe from the evidence, beyond all reasonable doubt, that the defendant made a felonious assault upon the witness, Sam Latta, with the unlawful and felonious intent to take his life, and with the premeditated design to effect his death, and that the ball fired from the pistol fired by the defendant struck and killed David Hartless, in this event the defendant would be guilty of murder the same as if he had intended to take the life of David Hartless, unless you find the defendant was justified in acting in his own necessary self-defense against the prosecuting witness, Latta."

An exception to this instruction was properly reserved at the time it was given. This instruction should have gone further and informed the jury that, if the evidence on this point was such as to raise in their minds a reasonable doubt as to whether or not the defendant was justified in acting in his own necessary self-defense at the time he fired said shot, they should resolve such doubt in favor of the defendant, and acquit him.

Third. In their brief counsel for the appellant complain of remarks alleged to have been made by the county attorney in his closing address to the jury. Upon this subject we find the matter correctly stated in the brief of counsel for the state, as follows:

"We have diligently searched this record and fail to find any place in it where the trial judge certifies that such argument was made. The record also fails to disclose that any objection was made to such argument at the time it was made, if made, and that request was made to withdraw same from the jury, or that such request was refused and exception thereto taken. The first intimation that such occurred is in the motion for a new trial, which is not sworn to. This court said in the case of *Johnson v. U. S.*, 2 Okla. Cr. at page 22, 99 Pac. 1022: 'When the prosecuting attorney goes outside of the record and makes improper remarks calculated to prejudice the rights of the accused, it is the duty of the counsel of the accused to promptly interpose an objection to such remarks, and move the court to withdraw them from the consideration of the jury, and instruct the jury not to consider them. In the absence of the record showing a motion by the accused to withdraw from the consideration of the jury the remarks complained of and the overruling of said motion, in cases other than capital offenses, this court will not reverse the judgment on

account of such remarks.' In *Gillooley v. State,* 58 Ind. 182, it was held that improper comments made by the prosecuting attorney to the jury, in his argument, must, to be available as ground for a new trial, be excepted to. This was also the holding in the following cases: *Von Pollnitz v. State,* 92 Ga. 16, 18 S. E. 301, 44 Am. St. Rep. 72; *Wheeless v. State,* 92 Ga. 19, 18 S. E. 303; *State v. Jefferson,* 43 La. Ann. 995, 10 South. 199; *State v. Hall,* 44 La. Ann. 976, 11 South. 574; *Veasey v. State,* 6 Ga. App. 208, 64 S. E. 709; *Bias v. U. S.,* 3 Ind. T. 27, 53 S. W. 471. This question, therefore, is not properly presented by the record."

The question which presents itself is as to whether or not the errors herein pointed out are such as to justify this court in granting the defendant a new trial. Section 6957, Snyder's Comp. Laws Okla. 1909, is as follows:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

To determine the question as to whether or not the defendant has been deprived of a substantial right in this trial, we must consider the entire record in the case.

Testimony introduced in this trial is as follows:

Sam Latta testified, in substance, that on the day of the killing he went from the barber shop to the Ruby Cafe for dinner. That he saw Henry Johnson, the defendant, and David Hartless, the deceased, seated at the counter eating, as he went in. That he passed them and sat down at the far end of the counter and remained seated about a minute. That he walked outside and talked to a Mrs. Wells for a minute. That Hartless came out of the restaurant just as Mrs. Wells walked away, but Johnson stopped to pay the cashier as he came out. That he saw Johnson take a gun out of his hip pocket and put it in the inside of his coat, as he came from the counter to the door. That as Johnson came out of the door, he turned toward him with the gun pointed at him. That he grabbed the gun and hit the defendant twice, when Hartless grabbed him from behind, and that they struggled for several minutes over about 20 feet of space, when the gun was discharged and the ball went through his side and killed Hartless.

Witness admitted that he had before had trouble with the defendant, and admitted that he and his brother had beaten defendant's stepfather in attempting to find out where defendant was. Said he felt suspicious of having trouble; that his brother had been having trouble with the defendant.

Wm. F. Kelley testified .that he was passing, on the street at the time the trouble occurred. That he noticed the witness, Sam Latta, standing in front of the cafe and Hartless standing near him. That the defendant came out of the restaurant, took a step or two west and faced Latta, with his gun pointing at him. That Latta struck at defendant twice and grabbed the gun, and that Hartless grabbed Latta and in the scuffle the gun was discharged. That they did not scuffle down the street.

Mrs. Wells testified that she came out of the restaurant and spoke a few words with Latta; that when she had walked about two doors east some one called to her to "look out," and pushed her in a stairway just as the shot was fired.

Wm. M. Marquitz testified that he had a store next door east of the restaurant; that on the day of the killing he heard a scuffle in front of the store on the east of the store door. That he saw three men struggling together. That Johnson had the gun and Latta had a hold on the gun or Johnson's hand. That Hartless had a hold of Latta. That they scuffled west past his door before the shot was fired.

Genton Hargrove, a policeman, testified that he was about 60 feet west of the restaurant when the shot was fired, and facing the opposite direction. That he turned and walked east and met the defendant, who surrendered to him and handed him the gun. That he carried the defendant to the police station. That the witness, Sam Latta, came to the station and offered him $10 if he would let him get to the defendant.

Ellis Gourd testified that he knew the parties. That on the Friday following the shooting Latta told him that he grabbed Henry as he came out of the restaurant, and that if Hartless had

5  Cr.—2

kept his hands off there would have been no shooting, but that he would have beat Henry to death.

Frank Long testified that he had been a deputy marshal before statehood, and at one time had a warrant for Johnson on account of trouble he had with a brother of Sam Latta. That Sam Latta told his brother that he ought to have killed Johnson, and that if he ever got a chance at him he would fix him. That witness afterwards told the defendant of the threats made by Sam Latta.

Sam Crossland testified that he was standing east of the restaurant when Johnson came out and turned east. That Latta either struck him or laid his hand on him. That witness started up the street and did not notice anything further until he heard the shot.

·O. Richardson testified that when he went into the restaurant Latta was standing outside, on the west side of the door. That witness sat at a table next to the front window; that as Johnson went out of the door he turned east. That Latta either struck him or reached over at him. That they clinched and scuffled east past the window and then back in front of the window, when the shot was fired.

W. R. Robinson testified that he was in Dr. Nichol's office on the day of the shooting, when Sam Latta was there getting his wound dressed. That Latta stated that he grabbed Johnson in the collar as he come out of the door and struck him.

Chas. C. Jones testified that he was standing in front of the restaurant when Johnson came out. That Latta grabbed him by the neck from behind and struck him. That Johnson then pulled the gun, and Hartless and Latta both grabbed for it, and in the scuffle it was discharged.

The defendant testified that Mr. Long had told him of the threats made by Sam Latta. That he and Latta had not spoken for some time. That he left Tahlequah and was on his way to Bartlesville to avoid further trouble with Latta and his brothers. That he was in the restaurant when Latta came in and passed· ·

him, and that Latta grabbed him in the collar from the back and hit him twice. Hartless grabbed Latta, and said, "Don't do that, Sam," and defendant then pulled his gun, and in the scuffle the gun was discharged. That he did not fire the gun intentionally. That he was trying to get away from Latta.

It is seen from this that the evidence was conflicting. The state's witnesses made a plain case of attempted assassination. The witnesses for the defendant clearly presented the .issue of self-defense. Under these conditions it was a substantial right of the defendant to have the jury fully and affirmatively instructed as to the law of the case. We therefore hold that the errors hereinbefore pointed out were material, and that the defendant should have a new trial. The judgment of the lower court is therefore reversed, and the cause is remanded for a new trial.

ARMSTRONG and DOYLE, JUDGES, concur.