## MIDLAND VALLEY R. CO. v. LARSON. ,

No. 2917.    Opinion Filed January 19, 1914.

(138 Pac. 173.)

1.    **DAMAGES — Petition — Sufficiency.**   Where the petition, in an action for damages, contains sufficient statements of facts to show the court that plaintiff has sustained a detriment, and the amount thereof, and that defendant had wrongfully caused same, and that it is a detriment for which the law affords redress, such a petition states a cause of action.

2.    **PROPERTY—Ownership—Presumption From Possession.**   In the absence of evidence to the contrary, a presumption of ownership of real or personal property arises from the possession and control of such property.

3.    **CARRIERS—Trial—Demurrer to Evidence — Damages to Shipment.**   A demurrer to the evidence admits every fact which the testimony, together with such inferences as may reasonably arise from the surrounding circumstances, reasonably tends to prove; and, in an action for damages, where the testimony, considered in the light of the surrounding circumstances, reasonably tends to show that plaintiff has sustained the amount of damages claimed, and that defendant had unlawfully caused such damages, a demurrer to the evidence is properly overruled.

4.    **CARRIERS — Delay in Furnishing Car—Liability—Authority of Agents.**   The law does not require that a station agent be authorized to contract with a shipper to furnish a certain kind of car at a certain hour of a certain day, in violation of prescribed rules of the company, and in discrimination against other shippers, but it does require that he be authorized to furnish reasonable facilities within a reasonable time for carrying on the business of the public, either upon his own authority or upon his demand or notice to the company; and, where a car has been demanded by a shipper and promised by an agent, and a reasonable time taken for furnishing same, then, in the absence of satisfactory showing for an unreasonable delay, the company will be held liable for the damages resulting from such delay.

5.    **EVIDENCE — Competency — Value of Chattels.**   Ordinarily the owner of chattels is qualified, by reason of that relationship, to give his estimate of their value, and where he qualified as knowing the market value of such chattels as hogs, sheep, cattle, and horses, it is not error to permit him to so testify.

6.    **EVIDENCE—Competency—Transportation of Shipment—Reasonable Time.**   Where a party has been engaged in shipping stock from one point to another over a line of railroad for a period

of ten years, during which time he shipped some 30,000 head of stock, and states that he knows the reasonable time required for making the trip, he should be permitted to so testify.

7. **CONSTITUTIONAL LAW—Verdict—Number of Jurors Assenting.** ''Where the cause of action arose before the adoption of the Constitution, but suit was not filed until afterwards, the constitutional provision permitting a verdict to be returned by three-fourths of the jurors applies.'' **C., R. I. & P. Ry. Co. v. Baroni, 32 Okla. 540, 122 Pac. 926.**

8. **APPEAL AND ERROR—Presentation Below—Remarks of Counsel.** Where the remarks of counsel are objected to by opposing counsel and objection is sustained by the court, and no exception is taken to the ruling of the court nor request made that the jury be admonished in reference thereto, a judgment will not be reversed because of the remarks complained of.

9. **TRIAL—Injury to Shipment—Instructions—Measure of Damages.** The giving of the following instructions is assigned as error: ''You are instructed that if you find that the plaintiff is entitled to recover for any damages to the sheep by reason of holding them while waiting for the car, as explained in the preceding instruction, such item of damage should be determined by you, finding the market value of the sheep in the condition they were when delivered at the destination, and then finding their market value in the condition they would have been in if the delay had not occurred at the stock pens at Hardy, Okla.; and then the difference between these two values would be the proper amount of damages, as to that item.'' **Held,** this instruction, in the light of the entire charge, is not prejudicial to defendant's rights.

(Syllabus by Harrison, C.)

*Error from County Court, Kay County;*
*Claud Duval, Judge.*

Action by Matthew Larson against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Edgar A. De Meules* and *Sol H. Kauffman,* for plaintiff in error.

*P. W. Cress* and *H. S. Braucht,* for defendant in error.

Opinion by HARRISON, C. This action was begun in the county court of Kay county in March, 1909, by Matthew Larson against the Midland Valley Railroad Company for damages sustained by reason of delay in shipment of fat sheep from Hardy, Okla., to Kansas City, Mo. The cause was tried in February,

1911, and verdict returned and judgment rendered in favor of plaintiff for the sum of $331.50, from which judgment and order overruling motion for new trial the railroad company brings error upon 37 separate assignments of error, the first being that the court erred in overruling the demurrer of plaintiff in error to the first cause of action stated by plaintiff below.

The portions of plaintiff's petition complained of by the railroad company which purport to state the cause of action against the railroad company are as follows:

" * * * (2) That on or about the 24th day of February, 1907, plaintiff ordered a car for the shipment of sheep over the defendant's line of railroad from Hardy, Okla., to Kansas City, in the state of Missouri. Plaintiff ordered the said car for shipment from the said station on the 4th day of March, 1907, and plaintiff was advised by the agent in charge of said station that the car so ordered would be placed in position for loading on Monday morning, March 4, 1907.

"(3) Relying upon the advice of said agent, plaintiff drove 243 head of sheep to the station at Hardy, Okla., on March 4, 1907; that when he arrived with the said sheep at the said station the car as ordered had not arrived; that plaintiff was compelled to place the said sheep in stock pens at the station without proper shelter, and away from their accustomed feed lots, to await the car for shipment of the said sheep; that defendant failed to send and place a car for the shipment of said sheep until about the 8th day of March, 1907; that the delay in delivering the said car for the shipment of said sheep compelled plaintiff to hold said sheep in the said pens for over four days, until the 9th day of March, 1907, and the said sheep were greatly reduced in weight, and put in bad condition for shipment and market."

"(7) That by reason of the said negligence of the defendant, its agents and servants, as aforesaid, plaintiff was obliged to and did hire three men and a team five days to care for said sheep after they should and would have been shipped but for the negligence of the defendant as aforesaid, at a cost to plaintiff and to his damage in the sum of $37.50; that plaintiff was compelled to and did furnish extra feed to said sheep, to wit, twenty bales of hay, worth $4, and 35 bushels of corn, worth 32 cents per bushel, and of the value of $11.20."

Plaintiff further alleged that the car was furnished on the 9th, and the shipment delivered on said date for the Kansas

City market, and that upon arrival at Kansas City notice in writing was given to the railroad company of the damage done to the shipment. Upon refusal of the company to reimburse plaintiff for the damage thus sustained, this action was brought for the sum of $282.70, and interest at 7 per cent. from the 12th day of March, 1907.

We cannot agree with plaintiff in error that these allegations, considered in connection with the formal statements in the petition, do not contain sufficient statements that plaintiff had sustained a detriment, and that defendant railroad company, through its agents and employees, had wrongfully caused such detriment. This being true, then under section 2882, Comp. Laws 1909 (section 2845, Rev. Laws 1910), Larson was entitled to compensation for the damages thus sustained.

The next assignment of error is that the court erred in overruling the demurrer to the evidence. Plaintiff in error's contention in this regard is based upon his assumption that the testimony failed to show that Larson was the owner of the sheep in question. While it does not appear in the record that Larson anywhere said, in so many words, "These were my sheep," yet from beginning to end of the testimony his testimony is laden with valid inferences that he was the owner of the sheep in question. In fact, no other inference could be drawn from the testimony. He stated: That he had been engaged in feeding sheep for about ten years, during which time he probably had fattened and shipped 30,000 head. That this winter he was feeding 1,500 head. That, a portion of them being ready for shipment, he went in to the agent to ascertain as to when he could get cars; told him about how many he wanted to ship, and the agent told him about when he could have the cars. Relying upon this information, he returned home and began to make preparation for the shipment. That in order to make sure and sustain no loss by carrying his shipment in and finding no car there, he sent one of his men in to know if the car would be on hand, and received the information from the agent through such employee that the car would be on hand. In order to make still more certain in this regard, he sent his son in on the day before

he took the sheep, to ascertain if the car would be there, and was again informed by the agent that it would be. That thereupon he cut out 245 head of sheep and drove them to town. When he got there the car was not there, and no satisfactory explanation given for its not being there. He was compelled to keep the sheep there for a period of five days in muddy, unsheltered, unfit pens, compelled to buy feed for them and hire hands to feed them. That by reason of this circumstance the sheep sustained great loss in shrinkage of flesh, and that he was put to this extra expense in feeding and caring for them, and that he was damaged by reason of such circumstance in the sum for which the action was brought. From an examination of the record, his ownership in the sheep is conclusive; the question of ownership was never raised. This assignment of error appears to us more frivolous than otherwise, and entirely too theoretically technical to be given consideration here. Besides, the rule is:

"A rebuttable presumption of ownership which, in the absence of evidence to the contrary, the law will assume to be correct arises from possession of real or personal property. Where several persons are in apparent possession, the presumption of title is in favor of him whose acts of control and dominion preponderate." (16 Cyc. 1074, and numerous cases cited in notes.)

Another feature of the second assignment of error is based upon the contention that defendant in error failed to prove ownership in the sheep, and failed to prove that he had been damaged. With this contention we cannot agree. We think the testimony conclusively shows ownership, and specifically shows the damage sustained, and that defendant was the wrongful cause thereof. Besides:

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence, and, upon a demurrer to the evidence, the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove." (*Anthony v. Bliss*, 39 Okla. 237, 134 Pac. 1122.)

See *Edmisson v. Drumm-Flato Co.*, 13 Okla. 440, 73 Pac. 958; *Shawnee L. & P. Co. v. Sears*, 21 Okla. 13, 90 Pac. 449; *Ziska v. Ziska*, 20 Okla. 634, 95 Pac. 254.

Considered under the light of this rule, the evidence dis-closed by the record is amply sufficient to sustain the judgment.

The third assignment presented is error in refusing peremptory instruction in favor of the railroad company. Under this assignment it is contended that the agent of the company at Hardy had no authority to make the contract which plaintiff alleged was made in reference to the car and the time within which it should be furnished, nor to make any contract other than the printed contract under which the shipment was made. Counsel devotes about twelve pages of his brief citing a number of authorities in support of this contention. In answer to such argument we will say that it is the duty of the railroad company to furnish agents at the stations along its line who are authorized to transact the business of the public, without unreasonable delay. If the railroad company had no such agent at Hardy, then it was derelict in discharging its obligations to the public in not having such a person there. The law does not require that a station agent be authorized to contract to furnish a certain kind of car, at a certain hour of a certain day, in violation of prescribed rules and in discrimination against other shippers, but it does require that he be authorized to furnish reasonable facilities within reasonable time for carrying on the business of the public, either upon his own authority or upon his demands or notice to the company that such facilities are required. This was all that was required by the shipper in the case at bar. He did not demand of the company to furnish a double-deck car on a certain day in violation of prescribed rules, or in discrimination against other shippers, nor did he seek to bind the company to such a contract, but eight days before the shipment he went in to consult the agent about when he could get such a car as he needed. The agent informed him that he could get same about eight days from that date. This number of days was considered, both by the agent and the shipper, to be a reasonable time in which to obtain the cars. Plaintiff relied upon the agent's statements, and had a right to rely upon same, and, relying upon such statements, returned to his ranch and began preparations for ship-

ment on the day mentioned. However, as stated before, within a few days before the day for the arrival of the car, he sent one of his men in to know if the car would be there, and was informed that it would be. On the day before he cut out his sheep and drove them in, he sent his son in again to inquire of the agent, and was again informed that the car would be set for him. Instead of this, the car did not arrive for five days thereafter, during which time he was compelled to keep his sheep in unsheltered pens where he was delayed, sustaining the loss by shrinkage complained of. Under the record before us, especially in the absence of any showing to the contrary, the eight days was a reasonable time within which to furnish the car required, and the five days' delay thereafter, in the absence of any showing to the contrary, was an unreasonable delay, and the jury was justified in so finding.

In *Midland Railroad Co. v. George*, 36 Okla. 12, 127 Pac. 871, which was an action against the railroad company for failure to furnish cars at the time promised in an oral agreement by the station agent, the first paragraph of the syllabus is as follows:

"Where a railroad company, by oral agreement with its agent, promises to furnish cars at a certain time, and on account of its failure to do so the freight fails to connect with the train on a connecting carrier, and the freight is damaged by the delay, the company is liable for actual damages caused by the delay."

The next assignment argued is error in admitting incompetent evidence. The testimony complained of is that plaintiff, Larson, was permitted to testify as to the market value of the sheep at Hardy on the day they were brought in and on the day they were shipped out, and also as to the market value of such sheep on the market at Kansas City on the day they would have reached the market, if transported with reasonable dispatch, and the day on which they did reach the market; and there was the further objection that the witness was permitted to testify as to what was a reasonable time for transportation from the point of shipment to the point of destination.

In the first place, the market value of domestic animals, such as horses, sheep, cattle, and hogs, is not such a subject as to be brought within the strict rule for receiving expert testimony. Values of this character are so easily and ordinarily understood that any one who knows should be permitted to testify. We can see no reason for it, nor any common sense, in applying the strict rule for expert testimony to testimony of this character. The witness in question stated that he did know the market value, and then he testified what such value was. Besides, it appears that he had been engaged in feeding sheep for the market for about ten years, during which time he had fattened and shipped some 30,000 head; had closely studied the method of handling, the method and amount of feeding, the nature and qualities of the sheep, and had kept himself posted as to market values. The rule is well settled that the owner of chattels is qualified, by reason of that relationship, to give his estimate of their value. 17 Cyc. 112 to 116, and authorities cited in notes. It does not require experts, within the strict meaning of the rule, to testify to matters of this character. This is a character of knowledge which may be obtained and is generally known by even the most ordinary persons. In *Yates v. Garrett,* 19 Okla. 449, 96 Pac. 142, an expert witness is defined as "one possessing, in regard to a particular subject or department of human activity, knowledge not acquired by ordinary persons." Knowledge of the market value of domestic animals of this character is too generally known, especially by persons engaged in such business, to be brought within the strict rule of expert testimony.

Likewise his knowledge as to the time it usually took, under ordinary circumstances, to make the trip from Hardy, Okla., to Kansas City was a matter which might be well understood, well known by any person engaged in the shipping business as long as this witness had been engaged. We think the testimony was correctly admitted, the witness having stated that he knew the market value of the stock and the time which, under ordinary circumstances, was required for transporting same from the point of shipment to the point of destination.

The next assignment is that the court erred in giving the following instruction:

"You are instructed that if you find that the plaintiff is entitled to recover for any damage to the sheep by reason of holding them while waiting for the car, as explained in the preceding instruction, such item of damage should be determined by you finding the market value of the sheep in the condition they were when delivered at the destination, and then finding the market value in the condition they would have been in had the delay not occurred at the stock pens, at Hardy, Okla.; and then the difference between these two values would be the proper amount of damage as to that item."

See *St. L. & S. F. R. Co. v. Piburn*, 30 Okla. 262, 120 Pac. 923.

This instruction, considered in connection with other instructions given, cannot be said to have been prejudicial to the substantial rights of plaintiff in error.

The next objection is that the court erred in instructing the jury that three-fourths of their number might return a verdict. In the first place, plaintiff in error could not have been prejudiced by this instruction, for the reason that the verdict returned was a unanimous one; but, aside from this, in the case of *C., R. I. & P. Ry. Co. v. Baroni*, 32 Okla. 540, 122 Pac. 926, this court held:

"Where the cause of action arose before the adoption of the Constitution, but suit was not filed until afterwards, the constitutional provisions permitting a verdict to be returned by three-fourths of the jurors applies."

See *Independent Cotton Oil Co. v. Beacham*, 31 Okla. 385, 120 Pac. 969; *St. L. & S. F. R. Co. v. Ramsey*, 37 Okla. 448, 132 Pac. 478. The same rule obtains in *Independent Cotton Oil Co. v. Beacham*, 31 Okla. 385, 120 Pac. 969, and the case at bar comes within the rule of these two cases.

The next objection to be considered is to certain remarks made by plaintiff's counsel to the jury, but it appears from the record that the remarks were objected to by counsel for the defendant at the time and the objection sustained by the court. Counsel saved no exception either to the argument or to the ruling of the court; and the question, therefore, is not before this court for review. There being no proper exception to the re-

marks complained of at the time, nor any exception taken to the ruling of the court thereon, the question is not properly before this court for review. See *Coalgate Co. v. Bross,* 25 Okla. 244, 107 Pac. 425, 138 Am. St. Rep. 915; *Kaufman v. Boismier,* 25 Okla. 253, 105 Pac. 326; *Gann v. Ball,* 26 Okla. 27, 110 Pac. 1067; also *Johnson v. U. S.,* 2 Okla. Cr. 17, 99 Pac. 1022; *Thacker v. State,* 3 Okla. Cr. 485, 106 Pac. 986; *Johnson v. State,* 5 Okla. Cr. 13, 113 Pac. 552; *Glaser v. Glaser,* 13 Okla. 389, 74 Pac. 944; *Baker v. Tate, Executor, ante,* 138 Pac. 171.

The remaining question to be determined is the assignment that the court erred in overruling motion for a new trial, but the propositions involved in the motion for new trial have been disposed of under the other assignments herein determined.

We find no material error in the record. Hence the judgment of the trial court is affirmed.

By the Court: It is so ordered.