# ANDERSON v. STATE.

No. A-11000.  Sept. 7, 1949.

(209 P. 2d 721.)

2

Hughes, Ogden & Ogden, Guymon, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   John A. Anderson was charged in the district court of Texas county with the crime of murder; was tried, found guilty of manslaughter in the first degree, and sentenced to serve four years and three months in the reformatory at Granite.   From this judgment and sentence he has appealed.

In his brief, defendant sets out five propositions for reversal of this case.   They are:

"Proposition No. 1: The defendant in murder prosecution had the right to ask each juror in his voir dire examination whether he believed in the law of self-defense and the law excusing, upon certain prescribed conditions and circumstances, the killing of a human being by another person and whether he believed a defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt.

"Proposition No. 2: In a prosecution for murder, the admission in evidence of 6½ pints of liquor found by officers in defendant's home after he was placed in jail was prejudicial error as it is fundamental that the State cannot show that the accused has committed other crimes so as to force a man to stand trial for two crimes which are wholly unconnected.

"Proposition No. 3: It is the duty of the trial court in a prosecution for murder to instruct the jury as to the law of the case on trial, and this includes a definition of the offense and included offenses sufficient to inform the jury what facts are necessary for the proof to establish in order to justify them in finding a verdict of guilty.

"Proposition No. 4: In a prosecution for murder where self-defense is pleaded, it is not necessary for a jury to believe that a defendant's cause of apprehension of danger was reasonable before they can acquit him; neither is it necessary for them to find that his defense has been established by the evidence before they can acquit him, but it is their duty to find him not guilty if there exists a reasonable doubt as to whether he acted in self-defense.

"Proposition No. 5: In the instant case the verdict of the jury was clearly against the law of the case and the evidence and cannot be sustained."

The information charges this defendant with having murdered one Bernice Bartley on October 30, 1946, by shooting him. Defendant did not deny having killed the deceased, and his plea was self-defense.

The record discloses that the defendant was by trade a "pipe liner", and at the time of the tragedy was working for the Fulton & Brady Pipe Line Construction Company at Guymon, Okla. He was living alone at the Guymon courts, in a one-room cabin. The deceased also lived there, in an adjoining cabin. The defendant had been injured in World War I, and at the time of the difficulty suffered a 50 per cent disability in both knees, due to such injury.

The defendant testified that he returned to his cabin, from his work, about 7 o'clock in the evening of the trouble, cooked his evening meal and went to the rest room to take a bath. As he returned to his cabin, about 9 o'clock, Bartley was leaning against the cabin, and accused the defendant with having "run his girl off." Bartley was drunk, and defendant told him he did not know anything about his girls, and went on into his cabin and sat down to remove his shoes. Bartley followed him in, cursing and accusing defendant with being responsible for his girl leaving the camp, and finally knocked the defendant down, and "clinched him." Defendant testified that he thought Bartley had a knife and was trying to cut him. They fought on the floor, and defendant got loose and got up, and Bartley barred the only door so that he could not get out. He testified that Bartley kept repeating that he was going to kill defendant before he got out of the cabin. Defendant reached for his gun, which was on a shelf, and testified that he shot three times over Bartley's head, in an effort to frighten him, and make him leave the cabin, and that when Bartley came at him again, he shot to hit him. When shot Bartley did not say a word, but turned and ran out the door to his own cabin. Defendant did not know how badly he had hurt Bartley. He reloaded his gun, lock-

ed his cabin and immediately left. He went to the home of Clyde Parten, with whom he worked, and told him what he had done, and asked him to take him to the sheriff's office. Mr. Parten lived in Guymon and knew the officers, and defendant did not. When they got to the sheriff's office, no one was present, and they returned to the camp and found the sheriff and highway patrolman there, and defendant gave himself up. Defendant knew the deceased, had never had trouble with him before, liked him, but knew he was quarrelsome when drinking, and considered him dangerous. Bartley had showed him an array of knives he owned, and defendant had one time seen him try to cut a man.

The State used seven witnesses. Eldon R. Walsh, a highway patrolman, testified that he received a call from the Guymon Courts, picked up the sheriff and went out, arriving there about 9:15, in the evening. Defendant's cabin was locked, and they went to the cabin of deceased, and found him lying on the floor, dead. There were two other men in the cabin, on the bed, and they both said they were asleep. A few minutes after they arrived the defendant came up and give himself up to the sheriff. He testified to finding bullet holes in the cabin, and his testimony relative thereto was practically the same as that of the sheriff.

Ed Smith, who was sheriff of the county at the time, corroborated the testimony of the patrolman. He stated that the defendant told him the gun he had used was in Mr. Parten's pick-up truck. It was turned over to the sheriff, fully loaded, and was introduced in evidence. Defendant told him that he had shot three times over the head of Bartley in an effort to frighten him away, and finally shot to hit him. He testified to finding three bullet holes in the cabin as described by defendant, one

in a rafter having been shot about straight up, one in the ceiling and the other above the door. They found a box of shells for the gun. The trial court, over the objections of counsel for the defendant, permitted to be introduced in evidence six and one-half pints of liquor identified as having been found in defendant's cabin by the officers on a second trip to the cabin following the killing.

Willis Forbes, chief of police at Guymon, went with the sheriff and patrolman when they returned to search the cabin after taking defendant to jail, and corroborated the sheriff and patrolman with reference to the location of the bullet holes in the cabin.

Kenneth E. Smith, caretaker at the cabins, testified that he heard the shots and called the officers. He had heard a scuffle in defendant's cabin before he heard the shots.

Dr. D. S. Lee was called to the courts, but the body of deceased had been taken to the mortuary, and he went there and examined it. He described the one bullet wound which had killed Bartley. He also testified to examining the defendant the next morning, that his knees were bruised and one was swollen, and that he prescribed for defendant.

Mr. Smith was recalled and identified defendant's gun, the shirt worn by the deceased, and the whisky found; and Guy Mercer, the sheriff at the time of the trial, testified that the gun, the shirt and whisky introduced in evidence were the same articles turned over to him by the former sheriff as evidence in this case.

E. G. Moore, the funeral director, testified to taking the body of deceased to his mortuary, and identified the shirt as the one taken from the body.

Bert Grace testified for the defendant that he had known Bartley for 20 years, that he got drunk often, and was "pretty rough when drinking", and that he saw him take his knife out at one time in a fight. The court at first excluded this testimony, and later admitted it.

J. L. Burgess testified that he saw Mr. Bartley between 3 and 4 o'clock in the afternoon of the tragedy, and that he was drunk at the time, and that he got drunk often.

C. J. McDonald had known Bartley 12 years, and would testify he tried to cut a man one day in a fight while he was drunk.

Pink Sanders had known defendant ten years, his reputation was good, and he did not drink.

Clyde Parten worked with defendant, testified defendant got along well with the men with whom he worked, he never saw defendant drinking, and corroborated defendant's statement about taking him to the sheriff's office, and returning to the cabins where defendant gave himself up.

The state did not just introduce evidence to prove the death of Bernice Bartley and that defendant caused the death, but went further, used seven witnesses, and the proof on the part of the prosecution tended to show that the crime committed only amounted to manslaughter, or that the defendant was justifiable. See Tit. 22 O.S.A. § 745.

After a consideration of the entire record in this case, we are convinced that the defendant, John A. Anderson, was deprived of substantial rights in his trial in the district court.

8

Upon trial of this case, in instruction No. 12, the court defined manslaughter in the first degree as follows:

"Homicide is manslaughter in the first degree, as applied to this case, it is as follows: When perpetrated without design to effect death, by means of a dangerous instrument."

An exception to this instruction was properly reserved at the time it was given. The statutory definition, Tit. 21 O.S.A. § 711, is as follows:

"Homicide is manslaughter in the first degree in the following cases: * * * 2. When perpetrated 'without a design to effect death *and in the heat of passion, but in a cruel and unusual manner, or* by means of a dangerous weapon; *unless it is committed under such circumstances as to constitute excusable or justifiable homicide.*" (Italics ours.)

It is true that there was nothing in the evidence to indicate any heat of passion nor any evidence that the killing was done in a cruel or unusual manner, and the omission of such elements could not under the facts prejudice the rights of the defendant, but defendant's defense was based upon the claim of self-defense, and therefore justifiable homicide, and the defendant was entitled to have the crime of manslaughter in the first degree to include the necessary clause: "unless it is committed under such circumstances as constitute excusable or justifiable homicide."

It is true that instruction No. 13 covered justifiable homicide, but if the jury in considering instruction No. 13 applied the rule announced by the court in instruction No. 12, quoted above, it was bound to find the defendant guilty of manslaughter in the first degree by his own testimony. It could do nothing else. It did find him guilty of manslaughter in the first degree. And al-

though instruction No. 13 is subject to criticism for not containing an instruction as to reasonable doubt, the jury could have acquitted the defendant, under said instruction, if it had found said assault was committed under such circumstances as constitute justifiable homicide. Instructions 12 and 13 cannot be harmonized.

Said the court, Furman, P.J., in Price v. State, 1 Okla. Cr. 358, at page 388, 98 P. 447, at page 460:

"We concede the contention of the state that instructions are to be construed as a whole, and if, when so construed, they clearly and correctly state the law, then the instructions are sufficient. But this does not mean that an erroneous instruction upon a material issue can be cured by giving a correct instruction upon the same question in another portion of the instructions. Can instructions which are self-contradictory be harmonious and sufficient? Who can tell which instruction was followed by the jury? If the court did not harmonize the instructions given, how can it be expected that the jury could or would do so? If juries are to pass upon the sufficiency of instructions, then are they not the judges of the law as well as the facts? Instructions should be clear, explicit, and free from ambiguities and contradictions; otherwise they may confuse and mislead the jury."

Among other assignments of error relied upon for a reversal of this judgment, being defendant's Proposition 5, is the giving over the objections and exceptions of the defendant of instructions Nos. 4, 5, 8, 9 and 13, having to do with self-defense. We have carefully read these instructions and find them substantially correct, except that the court should have gone further in instruction No. 4, and informed the jury that if the evidence was such as to raise in their minds a reasonable doubt as to whether or not the defendant at the time of the homicide had reasonable grounds to apprehend a felony was about to be committed on or against him, and acted upon reason-

able appearances of danger of then receiving great bodily harm or death at the hands of his assailant, then the jury should resolve that doubt in favor of the defendant, and acquit him.

Instructions Nos. 5, 8, 9 and 13 are subject to the same criticism as No. 4, in that none of them refer to the matter of reasonable doubt. The jury should have been further instructed that if the evidence was such as to raise in their minds a reasonable doubt as to whether or not the defendant was justified in acting in his own necessary self-defense at the time he fired said shot, they should resolve such doubt in favor of the defendant, and acquit him.

The defendant is only required to introduce such evidence as will raise in the minds of the jury a belief that he acted in his own necessary, or apparently necessary, defense, or will create a reasonable doubt thereof. In either case he should be acquitted.

See Johnson v. State, 5 Okla. Cr. 13, 113 P. 552; Saulsbury v. State, 83 Okla. Cr. 7, 172 P. 2d 440; Grindstaff v. State, 82 Okla. Cr. 31, 165 P. 2d 846.

And the general instructions, although correct statements of the law, did not cure the failure to give in connection with the instructions covering self-defense (Nos. 4, 5, 8, 9 and 13) at least one instruction covering reasonable doubt.

Said Matson, J., in Brown v. State, 15 Okla. Cr. 64, 175 P. 66, 69:

"That the instructions must be considered as a whole, and, when so considered, if they correctly embody the law of the case, no error prejudicial to the defendant has occurred. That doctrine has been approved by this court in numerous cases, and it is not our policy to depart therefrom

as a general principle. But 'self-defense' is an affirmative defense. The statute places a peculiar burden upon a defendant in a homicide case where he attempts to justify a killing; and where the court by a separate instruction attempts to state the law of that defense as applied to the particular facts of the case, the burden required of the defendant should be properly safeguarded in the instruction itself. The jury is not required to believe such defense before an acquittal may follow; it is sufficient if such defense of itself raises a reasonable doubt of guilt, and in addition the jury may acquit if, on the whole case, a reasonable doubt of guilt exists. Such a doubt may arise from a consideration of all the evidence, and not necessarily from the defense interposed."

See, also, Price v. State, supra.

In Proposition No. 1 defendant contends that the court erred in sustaining objections to certain questions counsel sought to ask the jurors on voir dire examination, to wit:

"Do you believe that a man has the right to defend his life, to the extent of killing another man, if he believes he is in imminent danger of losing his own or suffering bodily harm?"

The court properly overruled the above question for the reason that it did not properly state the law of self-defense. The mere fact that a man may believe that he is in imminent danger of losing his life or suffering serious bodily harm does not justify him in killing a man. See Tit. 21 O.S.A. § 733 (2) defining justifiable homicide.

Counsel asks the further question:

"Do you understand that a defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt?"

The court sustained an objection by the county attorney to this question. Counsel for defendant did not seek to question the jurors as to whether or not they would be governed by the instructions that would be given by the court covering self-defense and covering the burden of proof, or to reframe his question to explore the possibility of bias and prejudice by the jurors. The jurors might have been asked whether any might be conscious of bias and prejudice that would cause them to think a man guilty simply because he was charged with an offense of the law.

A liberal latitude should be given the defendant in the examination of jurors on voir dire to the end that it may be ascertained whether there are grounds for challenge for either actual or implied bias; also to enable the defendant to exercise intelligently his peremptory challenges. Temple v. State, 15 Okla. Cr. 176, 175 P. 733.

We do not hold that it constituted error by the court on voir dire in overruling the questions asked.

In Proposition No. 2, the defendant complains that it constituted reversible error on the part of the trial judge in admitting in evidence over the objections and exceptions of the defendant, six and one-half pints of whisky found in the cabin of the defendant by the officers.

A careful reading of the entire record fails to show any evidence remotely connecting the whisky with the crime charged. There was no evidence that the defendant had been drinking at the time of the killing, or that the difficulty arose over the whisky. The state contends that the defendant could not have been prejudiced by the admission of the liquor because the various witnesses tes-

tified to the finding of the whisky without any objection whatever on the part of counsel for defendant. Counsel for defendant does not complain of the mere statement of the witnesses as to what was found in the cabin, but did object and except to the introduction in evidence of the six and one-half pints of whisky, and has here assigned the same as reversible error.

The defendant, of course, waived any error in permitting, without objection offered, the witnesses to testify as to finding whisky in his cabin, but such failure did not justify the admission over defendant's objection and exception, of the liquor in evidence.

This question was before the court in Johnson v. State, 73 Okla. Cr. 370, 121 P. 2d 625, 633, being a prosecution for rape, and where a whisky still had been found on the defendant's premises; and the trial court permitted the still to be introduced into evidence. The court held this to be reversible error. The court stated:

"It is fundamental [error] that the state cannot show that the accused has committed other crimes so as to force a man to stand trial for two crimes which are wholly unconnected." And see Hall v. State, 67 Okla. Cr. 330, 93 P. 2d 1107.

We therefore hold that the errors hereinbefore pointed out were material, and the defendant should have a new trial. The judgment of the lower court is therefore reversed, and the cause is remanded for a new trial.

JONES, P. J., and BRETT, J., concur.